### IN THE UNITED STATES DISTRICT COURT FOR THE
### NORTHERN DISTRICT OF FLORIDA
### PENSACOLA DIVISION

**UNITED STATES OF AMERICA**

**vs.**                                                      **3:02cr20/RV**
                                                             **3:06cv447/RV/MD**

**MARCO DUNCAN**

---

### REPORT AND RECOMMENDATION

This matter is before the court upon defendant's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (doc. 268).  The government has responded (doc. 275) and the defendant has filed a reply (doc. 279).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After a careful review of the record and the arguments presented, it is the opinion of the undersigned that defendant has not raised any issue requiring an evidentiary hearing, Rules Governing Section 2255 Cases 8(a) and (b), and that the motion should be denied.

**BACKGROUND**

Defendant and seven others were charged with conspiracy to possess with intent to distribute controlled substances, identified in the indictment as five kilograms or more of cocaine and 50 grams or more of cocaine base.  (Doc. 1). Defendant was a fugitive from the time of his indictment on February 20, 2002 until his April 21, 2003 arrest in Reno, Nevada.  During that time, all seven of his co-defendants pleaded guilty.  (Doc. 63, 64, 66, 68, 69, 81, 82, 85, 86, 91, 92, 98, 99).

Defendant filed a motion to suppress evidence seized from his vehicle subsequent to his arrest which was denied after response from the government and a hearing. (Doc. 181, 183, 188, 237).   On July 16, 2003, the government filed a notice of enhancement (doc. 187) indicating that the defendant was subject to enhanced penalties due to a single prior felony drug conviction.   Defendant was tried before a jury from July 21-23, 2003.  (Doc. 237, 238, 239).  He was convicted as charged and by special verdict form the jury found that the conspiracy involved five kilograms or more of cocaine.  (Doc. 191).  The jury did not make any findings with respect to cocaine base.   A forfeiture verdict of $340,000 was also returned against the defendant.  (Doc. 192).

In the PSR, defendant was held accountable for 30 kilograms of cocaine.  (PSR ¶ 38).  Because of trial testimony that "most" of the cocaine was converted into cocaine base, the probation officer calculated that 15.3 kilograms would be converted into cocaine base.  Thus, defendant was ultimately held accountable for 12.24 kilograms (15.3 x 80%) of cocaine base and 14.7 kilograms of powder cocaine, which converted via the Drug Equivalency Table into 247,740 kilograms of marijuana. (PSR ¶¶ 38, 39).  His base offense level was thus 38.  He received a two level adjustment for his possession of a firearm and a four level adjustment for his role in the offense. (PSR ¶¶ 47, 48).  Finally, he received a two level obstruction of justice adjustment for his false testimony at trial and because of a physical altercation with a co-defendant at the Santa Rosa County Jail.  (PSR ¶¶ 41, 42, 49).  Defendant's total offense level was thus 46, and his criminal history category was IV.   As the Guidelines table is maxed out at offense level 43, his guidelines sentence was life imprisonment.

At sentencing, counsel objected to the quantity of drugs attributed to the defendant, to the quantity that was calculated as having been converted into cocaine base, and to the firearm adjustment.  Both objections were overruled.  When asked to affirm his prior felony drug conviction defendant declined to do so, but the court

nonetheless found it was a valid conviction because defendant had testified at trial that he had been convicted of the offense, and he had not shown it to be in any way invalid.  (Doc. 243 at 30-31).   Defendant exercised his right of allocution and complained about counsel's performance, the attorney/client relationship and the outcome of his trial.  (Doc. 243 at 31-32).  The court found the obstruction of justice enhancement to be appropriate based on defendant's false testimony at trial,[1] and sentenced him to a term of life imprisonment.

Defendant appealed raising the following grounds for relief:

1.  Whether the district court correctly held him responsible for 1.5 or more kilograms of cocaine base;

2.  Whether the district court correctly denied his motion to suppress;

3.   Whether the district court's imposition of a two-level sentencing enhancement for possession of a firearm was clearly erroneous;

4.  Whether the district court committed plain error in imposing a four-level sentencing enhancement for aggravating role; and

5.  Whether the district court committed plain error in submitting the forfeiture count to the jury and in entering a monetary judgment against the defendant based on the jury's verdict.

On appeal, the Eleventh Circuit summarily rejected the last four of defendant's claims and found no error in the district court's finding with respect to drug type. *United States v. Duncan*, 381 F.3d 1070 (11th Cir. 2004).  On rehearing, the appellate court again affirmed defendant's conviction, finding that the district court's *Booker* error, relying on the judge-determined fact that the cocaine powder had been

---

[1]No mention was made of the adjustment for defendant's role in the offense, although in defendant's written objections to the PSR he objected to this as he continued to deny any role in the conspiracy.  The court stated at sentencing that defendant's offense level was 42, which it would have been absent the role adjustment. However, the court also stated that defendant's offense level carried a life sentence.  This would be true of offense level 46, but not of offense level 42, which carries a sentence of 360 months to life regardless of the defendant's criminal history category.  (Doc. 243 at 31).  Because the defendant appealed the imposition of the role enhancement, it appears that his offense level was actually 46 as set forth in the PSR.

converted into cocaine base in order to set the defendant's base offense level higher than it would have been set using only the jury's special verdict, did not rise to the level of plain error.  *United States v. Duncan*, 400 F.3d 1297 (11th Cir.), *cert. denied*, 546 U.S. 940, 126 S.Ct. 432, 163 L.Ed.2d. 329 (2005).  The court concluded that defendant could not overcome the third prong of plain error analysis because he could not show an error affecting his substantial rights.  400 F. 3d at 1301-1302, 1304.  His conviction and sentence were affirmed on February 24, 2005, and the mandate issued on April 29, 2005 (doc. 258).  The Supreme Court denied certiorari on October 11, 2005.  The instant motion was timely filed pursuant to the prison mailbox rule[2] on October 1, 2006.[3]

In this motion, defendant separates his claims into seven grounds for relief. First he contends that perjury so infected the suppression hearing and the trial that the jury's verdict cannot be relied upon as having produced a just result and the government failed to provide certain exculpatory and impeachment evidence.  His second claim is a multi-part ineffective assistance of counsel claim.  Third, he maintains that the AUSA's drug quantity determination led to an erroneous determination of forfeiture and sentence.  Fourth he contends that the sentencing court impermissibly found drug type and quantity greater than what was in evidence and different than that found by the jury.  Fifth, he alleges that the district court impermissibly engaged in fact-finding.  Next he claims counsel was ineffective for his failure to challenge sufficiency of the evidence with respect to the firearm

---

[2]*Houston v. Lack,* 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988) (holding that a pro se inmate's notice of appeal was filed as of the time he placed it in the prison mailbox, thus creating the "prison mailbox rule"); *Washington v. United States*, 243 F.3d 1299, 1301 (11th Cir. 2001) (absent evidence to the contrary, court assumes that a pro se petition is delivered to prison authorities for mailing the date it was signed); *Adams v. United States*, 173 F.3d 1339 (11th Cir. 1999).

[3]The undersigned initially recommended that the motion be summarily dismissed as untimely due to defendant's false statement on the § 2255 form that other than the direct appeal, he had filed no other petitioner, applications or motions with respect to this judgment in any federal court.  (Doc. 269).  Defendant objected and submitted a copy of his petition for writ of certiorari (doc. 272) and this court vacated its recommendation and directed the government to respond.  (Doc. 273).

attributed to him.  Finally he argues that counsel was ineffective because he failed to successfully challenge the four-point enhancement for defendant's role in the offense.  The government opposes the motion in its entirety.

**LEGAL ANALYSIS**

**Section 2255 review generally**

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited.  A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law or (4) is otherwise subject to collateral attack.  28 U.S.C. § 2255; *Thomas v. Crosby,* 371 F.3d 782, 811 (11th Cir. 2004); *United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir. 2000); *United States v. Walker*, 198 F.3d 811, 813 n.5 (11th Cir. 1999).  "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'"  *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).  "[A] non-constitutional error that may justify reversal on direct appeal does not generally support a collateral attack on a final judgment, unless the error (1) could not have been raised on direct appeal and (2) would, if condoned, result in a complete miscarriage of justice."  *Lynn*, 365 F.3d at 1232-33 (citations omitted); *Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962) (error of law does not provide basis for collateral attack unless claimed error constituted a "fundamental defect which inherently results in a complete miscarriage of justice.").  The "fundamental miscarriage of justice" exception recognized in *Murray v. Carrier*, 477 U.S. 478, 496, 106 S. Ct. 2678, 2649, 91 L. Ed. 2d 397 (1986), provides that it must be shown that the alleged constitutional

violation "has probably resulted in the conviction of one who is actually innocent. . . ."

Although section 2255 mandates that the court conduct an evidentiary hearing "unless the motion and files and records conclusively show that the prisoner is entitled to no relief," a defendant must support his allegations with at least a proffer of some credible supporting evidence. *Ferguson v. United States,* 699 F.2d 1071, 1072 (11th Cir. 1983).  A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record. *Peoples v. Campbell*, 377 F.3d 1208, 1237 (11th Cir. 2004); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991); *Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989) (citations omitted).  Likewise, affidavits that amount to nothing more than conclusory allegations do not warrant a hearing.  *Lynn*, 365 F.3d at 1239.  A hearing is not warranted in this case.

### Ineffective assistance of counsel

Ineffective assistance of counsel claims are generally not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal.  *Massaro v. United States,* 538 U.S. 500, 503, 123 S.Ct. 1690, 1693, 155 L.Ed.2d 714 (2003); *see also United States v. Bender*, 290 F.3d 1279, 1284 (11th Cir. 2002); *United States v. Jiminez*, 983 F.2d 1020, 1022, n. 1 (11th Cir. 1993).  To show a violation of his constitutional right to counsel, defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d (1984); *Williams v. Taylor*, 529 U.S. 362, 390, 120 S.Ct. 1495, 1511, 146 L.Ed.2d 389 (2000). "*Strickland's* two-part test also applies where a prisoner contends ineffective assistance led him or her to enter an improvident guilty plea."  *Yordan v. Dugger,* 909 F.2d 474, 477 (11th Cir. 1990) (citing  *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366,

88 L.Ed.2d 203 (1985)).   In applying *Strickland*, the court may dispose of an ineffective assistance claim if defendant fails to carry his burden on either of the two prongs.   466 U.S. at 697, 104 S.Ct. at 2069.

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances." *Id.* at 688, 104 S.Ct. at 2065; *see Atkins v. Singletary*, 965 F.2d 952 (11th Cir. 1992).   "[R]eviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance." *Yordan v. Dugger*, 909 F.2d 474, 477 (11th Cir. 1990) (citing *Harich v. Dugger*, 844 F.2d 1464, 1469 (11th Cir. 1988); *Chandler v. United States,* 218 F.3d 1305, 1314 (11th Cir. 2000); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation")). Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight. *Strickland*,  466 U.S. at 689, 104 S.Ct. at 2065.   To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take."  *United State v. Freixas*, 332 F.3d 1314, 1319-1320 (11th Cir. 2003). (quoting *Brownlee v. Haley*, 306 F.3d 1043, 1059 (11th Cir. 2002)(quoting *Strickland*, 466 U.S. at 687, 689-90, 104 S.Ct. at 2064-66 and *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc)).   When examining the performance of an experienced trial counsel, the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect."  *Chandler*, 218 F.3d at 1316 n. 18.

With regard to the prejudice requirement, defendant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different.  *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068.  For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but

for counsel's error may grant the defendant a windfall to which the law does not entitle him." *Lockhart v. Fretwell*, 506 U.S. 364, 369-70, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993).  Defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Lockhart*, 506 U.S. at 369 (quoting *Strickland*, 466 U.S. at 687).  Or in the case of alleged sentencing errors, defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level. *Glover v. United States*, 531 U.S. 198, 203-04, 121 S.Ct. 696, 700-01, 148 L.Ed.2d 604 (2001).  A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance." *Id.*

To establish ineffective assistance, defendant must provide factual support for his contentions regarding counsel's performance.  *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir.), *cert. denied*, 484 U.S. 863, 108 S.Ct. 181, 98 L.Ed.2d 133 (1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test.  *Wilson v. United States,* 962 F.2d 996, 998 (11th Cir. 1992); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991); *Stano v. Dugger*, 901 F.2d 898, 899 (11th Cir. 1990) (citing *Blackledge*, 431 U.S. at 74, 97 S.Ct. at 1629); *United States v. Ross*, 147 Fed.Appx. 936, 939 (11th Cir. 2005).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between."  *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000).  This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted. *Dingle v. Secretary for Dept. Of Corrections,* 480 F.3d 1092 (11th Cir. 2007); *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000), *cert. denied*, 122 S.Ct. 234 (2001).

Counsel is not ineffective for failing to preserve or argue a meritless claim. *See Brownlee v. Haley,* 306 F.3d 1043, 1066 (11th Cir. 2002) (counsel was not ineffective for failing to raise issues clearly lacking in merit); *Meeks v. Moore*, 216 F.3d 951, 961 (11th Cir. 2000) (counsel not ineffective for failing to make meritless motion for change of venue); *Jackson v. Herring*, 42 F.3d 1350, 1359 (11th Cir. 1995) (counsel need not pursue constitutional claims which he reasonably believes to be of questionable merit); *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992) (no ineffective assistance of counsel for failing to preserve or argue meritless issue); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (counsel was not ineffective for informed tactical decision not to make what he believed was a meritless motion challenging juror selection procedures where such a motion has never been sustained because such a motion would not have been successful).

### 1.  Perjury and *Brady* violations

The defendant contends in his first ground for relief that perjury "so infected the suppression hearing and the trial that the jury's verdict was unreliable."  He also asserts that the government violated *Brady v. Maryland* when it failed to produce exculpatory impeachment evidence.  Either of these claims could have been raised on appeal.  A motion to vacate under section 2255 is not a substitute for direct appeal, and issues which could have been raised on direct appeal are generally not actionable in a section 2255 motion and will be considered procedurally barred. *Lynn v. United States,* 365 F.3d 1225, 1234-35 (11th Cir. 2004); *Bousley v. United States,* 523 U.S. 614, 118 S.Ct. 1604, 1610, 140 L.Ed.2d 828 (1998); *Mills v. United States*, 36 F.3d 1052, 1055 (11th Cir. 1994) (recognizing that a ground is "available" on direct appeal when "its merits can be reviewed without further factual development"); *United States v. Frady*, 456 U.S. 152, 165, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982).  Absent a showing that the ground of error was unavailable on direct appeal, a court may not consider the ground in a section 2255 motion unless the defendant establishes (1) cause for not raising the ground on direct appeal, and (2)

actual prejudice resulting from the alleged error, that is, alternatively, that he is "actually innocent."  *Lynn,* 365 F.3d at 1234; *Bousley,* 118 S.Ct. at 1611 (citations omitted).  To show cause for procedural default, a defendant must show that "some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [defendant's] own conduct."  *Lynn*, 365 F.3d at 1235.  A meritorious claim of ineffective assistance of counsel can constitute cause. *See United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000).  In this context, the court will examine the merits of defendant's claim.

As noted above, defendant was a fugitive from justice from the time of his indictment until his April 21, 2003 arrest in Reno, Nevada.  Special Agent Justin Shane Dillard of the Drug Enforcement Administration testified at the suppression hearing that he and Special Agent Michael Bakios observed the defendant enter the El Dorado Hotel and Casino from the parking garage area.  (Doc. 237 at 5).  He admitted that he had not seen the defendant in a vehicle, but noted that defendant's arrival via the street walkway was consistent with the defendant having parked in the garage as opposed to having arrived by bus or cab.  (*Id.*).  The two agents followed the defendant into the casino and watched him begin to play a bank of machines.  Agent Dillard testified that the hotel told the United States Marshal that a player's card with the name of Michael Bagley was being used in that bank of machines, and the agents placed him under arrest without incident.  (*Id.* at 6-7).  Defendant was searched pursuant to the arrest and agents recovered the identification of Michael Bagley, a set of keys including an electronic key fob[4] for the keys, and a parking receipt for the El Dorado parking garage.  (*Id.*).  When he asked defendant whether defendant had driven to the casino, defendant stated that he had not driven in anything.  Agent Dillard's supervisor, Mark Snyder, took the electronic key fob and walked through the garage area until he located a car that responded to the key fob.

---

[4]Agent Dillard explained that an electronic key fob was a device allowing an individual to remotely lock or unlock the vehicle by pushing a button.

Agent Dillard participated in the subsequent search of the car.  He stated that they seized an electronic scale which had been in plain view in the passenger's seat, a Ruger P-89 nine millimeter handgun from the center console, and some photographs from the trunk.  (*Id.* at 9-10).  Agent Dillard explained that standard DEA policy is to seize the vehicle and inventory the vehicle subsequent to that seizure and have the vehicle impounded, although in this case the vehicle was towed at a later time.  (*Id.* at 10-11).  Dillard noted that the vehicle was registered not to the defendant but to Ann and Rufus Green.

On cross examination, Special Agent Dillard testified that the car was not obstructing traffic or illegally parked, but that the vehicle had to be moved because "the hotel has a policy to remove any vehicle which is owned or occupied by a person who has been arrested in their hotel, casino."  (*Id.* at 16-17).  He further stated that he did not believe that any attempt had been made to contact the owners of the vehicle for them to remove it, but that the Reno Police Department removed it.  Agent Dillard stated that it is the DEA policy to inventory and tow a vehicle, although whether that applied when the arrestee is not in or near the vehicle at the time of arrest is "subject to some interpretation."  (*Id.* at 18).

Counsel for the defendant argued that his client had standing to contest the search because he had a key to the vehicle.  He asserted that the defendant's statement about not driving was not an abandonment of his expectation of privacy, that the search was not an appropriate "inventory" search, and that there was no probable cause to conduct the search.  (*Id.* at 21-26).  The government countered by arguing that even if the defendant did have standing to object to the search, he had abandoned it be denying he had driven the vehicle to the casino, that the search of the vehicle was standard DEA policy to impound and take inventory of a vehicle associated with an arrestee, and that there was probable cause based on defendant's fugitive status and the scale located in plain view.  (*Id.* at 26-27).

The court found that the defendant had abandoned any possessory interest and therefore had no standing to contest the search. (*Id.* at 28). It further found that even if a protected possessory interest remained, under the circumstances there was probable cause to search. It found that there was a long line of case law supporting the conclusion that it was appropriate for the DEA to use its standard procedures to search and inventory the vehicle and take it into custody to get it out of the hotel parking lot. (*Id.* at 29-30). Lastly, it mentioned that under the circumstances, the search might have been justified under the exigent circumstances exception, because it was a vehicle. The court concluded by finding that the search was appropriate "under any of those grounds." (*Id.* at 30).

Defendant contends in his § 2255 motion that Agent Dillard lied to the court and the court relied on Dillard's testimony to deny the motion to suppress and allow the evidence relating to defendant's arrest and search to be presented to the jury. Defendant refers to DEA Agent's manual which details procedures relating to arrest in an attempt to prove that Agent Dillard lied about the "standard procedures" used to justify the search of defendant's vehicle.

Section 6641.23 of the DEA manual provides that if a defendant is arrested in a vehicle, the incident search may encompass the entire passenger compartment and containers located therein. (Doc. 268, exh. F at 3). The entire vehicle may be searched if there is probable cause to search and if the vehicle cannot reasonably be secured before obtaining a warrant. Or, if the vehicle is seized for forfeiture, it will be thoroughly inventoried, not necessarily contemporaneous with the arrest, for the purpose of identifying returnable property. There is no specific provision for a scenario such as that in the instant case, where the defendant is arrested outside of and away from the vehicle agents seek to search.

Even assuming, for sake of argument, that Special Agent Dillard's testimony regarding DEA regulations was intentionally false, which the court does not find, defendant is not entitled to relief. Reversal is warranted "if there is any reasonable

likelihood that the false testimony could have affected the judgment of the jury." *Ventura v. Attorney General, Fla.,* 419 F.3d 1269, 1278 (11th Cir. 2005) (quoting *United States v. Agurs,* 427 U.S. 97, 103, 96 S.Ct. 2392, 2397, 49 L.Ed.2d 342 (1976); see also *Kyles v. Whitley*, 514 U.S. 419, 433 & n. 7, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995); *United States v. Bagley*, 473 U.S. 667, 677, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985)). If the prosecutor fails to correct allegedly false testimony, whether reversal is warranted hinges on whether the statement was both false and material. *Ventura*, 419 F.3d at 1277. At the suppression hearing, the district court found that the search of the vehicle found in the El Dorado parking garage was appropriate for any one of four reasons, only one of which was that Agent Dillard's assertion that the vehicle was searched in accordance with DEA policy. Thus, absent this testimony, the search would have been upheld on other grounds. To the extent that the defendant argues that the search exceeded the scope of the DEA regulations, his argument fails for the same reason: the court upheld the search on other grounds, and could have done so without considering the agency regulations. Additionally, the fact that a search was not done in accordance with agency regulations is not conclusive proof that it is unconstitutional. Thus, any "falsehood" was not material.

Defendant also contends within this same ground for relief that the prosecution failed to disclose material favorable evidence in violation of *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196-1197, 10 L.Ed.2d 215 (1963). *Brady* held that the suppression by the prosecution of evidence favorable to the accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. It is not imperative that there be a request for the production of such evidence. *Kyles v. Whitley*, 514 U.S. 419, 433-34, 115 S.Ct. 1555, 1565, 131 L.Ed.2d 490 (1995); *United States v. Agurs*, 427 U.S. 97, 110, 96 S.Ct. 2392, 2401, 49 L.Ed.2d 342 (1976); *see also United States v. Scheer*, 168 F.3d 445, 451 (11th Cir. 1999)(material favorable, exculpatory or impeachment evidence must be produced regardless of request). A

successful *Brady* violation claim requires a showing that: (1) the prosecution possessed evidence favorable to the accused (including impeachment evidence); (2) the defendant did not possess the evidence nor could he have obtained it himself with any reasonable diligence; (3) that the prosecution suppressed the favorable evidence; and (4) had the evidence been revealed to the defense, there is a reasonable probability that the outcome of the proceedings would have been different. *United States v. Simms,* 385 F.3d 1347, 1357 (11th Cir. 2004); *United States v. Vallejo,* 297 F.3d 1154, 1164 (11th Cir. 2002); *United States v. Schlei,* 122 F.3d 944, 989 (11th Cir. 1997). A "reasonable probability" is a "probability sufficient to undermine confidence in the outcome." *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985) (quoting *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984)); *Kyles v. Whitley*, 514 U.S. 419, 434, 115 S.Ct. 1555, 1566, 131 L.Ed.2d 490 (1995); *United States v. Scheer*, 168 F.3d 445, 451-52 (11th Cir. 1999).

The evidence in question was a garage surveillance tape from the date of defendant's arrest. He maintains that had the tape been provided, the defense "may very well have succeeded in its motion to suppress," although he does not explain how the tape would have been helpful. In fact, one of the attachments to his motion actually weakens his conclusory claim. Defendant hired a private investigator after his arrest and conviction. The investigator learned that: 1) a copy of the video surveillance tape was turned over to Deputy Marshall David Gump;[5] 2) that the El Dorado did not maintain the original or a duplicate tape; and 3) "it is highly unlikely that any surveillance camera within the garage area would have been able to see into a car and have seen any scale, if, in fact, it was even inside the passenger compartment of the car unless the camera was positioned very close in proximity

---

[5]Deputy Gump submitted an affidavit in support of the government's response indicating that he never received any surveillance tape from the casino/hotel, including a tape showing the garage area of the casino. (Doc. 275, exh. 3). Special Agent Dillard's affidavit is not instructive, stating only that to his knowledge, no one associated with the investigation obtained any surveillance tape from the casino/hotel, including any surveillance tape showing the garage area of the casino. (Doc. 275, exh. 4).

to the car and even in that case it is doubtful that the camera would have been able to see into the car." (Doc. 268, exh. D). Therefore, defendant's allegation that there was an "exculpatory" videotape is unsupported even by his own evidence. Defendant has failed to show that he is entitled to relief or that any actions or omissions of counsel altered the outcome of the proceedings.

### 2.   Ineffective assistance of counsel

Defendant claims, as he told the court at sentencing, that counsel was ineffective because he failed to subpoena witnesses who "could have cleared a lot of . . . the discrepancy in testimony." He also stated that counsel failed to investigate the facts and law of his case, and failed to interview witnesses. No absolute duty exists to investigate particular facts or a certain line of defense. Under *Strickland*, counsel's conducting or not conducting an investigation need only be reasonable to fall within the wide range of competent assistance. *Strickland*, 104 S.Ct. at 2066 (stating that counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary") (cited in *Chandler v. United States*, 218 F.3d 1305, 1317 (11th Cir. 2000)). A failure to investigate due to a mistake of law, on the other hand, could be found to be ineffective. *See, e.g., Kimmelman v. Morrison*, 477 U.S. 365, 106 S.Ct. 2574, 2588, 91 L.Ed.2d 305 (1986) (failure to file timely motion to suppress unlawfully obtained evidence amounts to constitutionally ineffective assistance when failure is based on counsel's unreasonable mistake of law about the government's duty to supply certain information to defense counsel before trial); *Williams v. Taylor*, 120 S.Ct. 1495, 1514, 146 L.Ed.2d 389 (2000) (failure to conduct investigation ineffective because the failure was based in part on attorney's mistake of law that information was not discoverable.) However, counsel is not required to "pursue every path until it bears fruit or until all hope withers." *Williams v. Head,* 185 F.3d 1223, 1236-37 (11th Cir. 1999). The Eleventh Circuit has also stated:

> **"In general, defense counsel renders ineffective assistance when [he] fails to investigate adequately the sole strategy for a defense or to prepare evidence to support that defense."** *Fortenberry v. Haley*, **297 F.3d 1213, 1226 (11th Cir. 2002). Counsel's duty to investigate "requires that counsel 'conduct a substantial investigation into any of his client's plausible lines of defense.'"** *Id.* **(citation omitted). In evaluating counsel's investigation, we have held that "counsel need not always investigate before pursuing or not pursuing a line of defense. Investigation (even a nonexhaustive, preliminary investigation) is not required for counsel reasonably to decline to investigate a line of defense thoroughly."** *Chandler*, **218 F.3d at 1318 (citing** *Strickland*, **466 U.S. at 690-91, 104 S.Ct. at 2066).**

*Michael v. Crosby*, 430 F.3d 1310, 1320-21 (11th Cir. 2005).

In this case, defendant does not identify any of the witnesses that he claims should have been interviewed or called to testify, or explain what the substance of such testimony might have been.  See *United States v. Guerra*, 628 F.2d 410, 413 (5th Cir. 1980) ("Complaints concerning uncalled witnesses impose a heavy showing since the presentation of testimonial evidence is a matter of trial strategy and often allegations of what a witness would have testified to are largely speculative"). Furthermore, at sentencing, counsel addressed the issue of the subpoenaing of witnesses as follows:

> Your Honor, prior to this trial I visited Mr. Duncan at the Escambia County Jail on eleven separate occasions, where we discussed all the government's evidence, we discussed the defendants who were probably going to testify. Obviously we didn't know exactly who they were, but we identified the people who could testify at this trial. And we also identified the people who could have testified on his  behalf, Ms. Angela Green, his girlfriend, and Mr. Charles Hooks, who is described as one person who might have been employed locally. We discussed having those people testify at trial and it was Mr. Duncan's decision not to have those people testify at trial and I respected his decision. In terms of him not knowing how to subpoena people, he certainly knew how to have a discussion with me. He could have told me and I would have used the power of the subpoena to bring them in.

(Doc. 243 at 35-36).  Defendant did not make any attempt to contradict counsel's representation to the district court, and this court concludes that defendant's conclusory allegations fail to establish the ineffectiveness of trial counsel.

Defendant next states that counsel was ineffective when he failed to secure discovery and then misinformed the defendant regarding the government's case and urged the defendant to proceed to trial.  Defendant now maintains that had counsel investigated further, he might have "taken a different route," ie, preferred to plead guilty (doc. 279 at 11).  There are two problems with these contentions.  First, the government has appended copies of correspondence between counsel and the government regarding discovery.  (Doc. 275, exh. 5).  These letters reveal that the government provided counsel with open file discovery, and also that defense counsel was specifically provided criminal histories of defense witnesses, a description of records the government intended to use at trial, copies of consensual recordings, photographs and other items.  (*Id.*).  The second and larger problem with defendant's conclusory assertion that he might have "taken a different route" by entering a plea of guilty is that defendant has continually maintained his innocence.  (See, e.g., doc. 248 at 28; PSR ¶ 43; doc. 239 at 18-19).  To now suggest that he would, or could, have entered a plea of guilty in light of his testimony under oath at trial denying any involvement in transporting, receiving, selling, distributing, or cooking cocaine is utterly not credible.[6]

Defendant claims that counsel failed to prepare for trial, and failed to interpose proper objections at trial. By way of example, he cites the testimony of Laveil Thrower who he claims was allowed to "testify without objection that it was his 'understanding' from others he did not name that Mr. Duncan had a gun once." (Doc. 238 at 206).  Actually, defendant mischaracterizes Mr. Thrower's testimony.

---

[6]In order for the court to accept a defendant's plea of guilty, he has to admit under oath that he did the acts alleged in the indictment, which this defendant has already denied under oath.  Entry of a guilty plea in this case after the testimony he gave at trial would require an admission that defendant committed perjury at trial.

Thrower was asked what the defendant had to show for all the money he was making, and he described various vehicles defendant owned. (Doc. 238 at 204-205). Thrower was then asked whether he had ever seen or known the defendant to own any guns, and he responded in the affirmative, describing weapons the defendant owned. (*Id.* at 205). The comment to which the defendant refers in his § 2255 motion was in response to the question: "Did [the defendant] ever bring any guns to Florida, to your knowledge?" Thrower replied "To my understanding, the first time we came, we transported a gun down here." (Doc. 238 at 206). He then testified that defendant had given the gun to Terrance Roberts, but Thrower never asked why, and clarified that the gun had been transported in the car that he and defendant drove in from California to Florida. Clearly, then, this testimony was not based on "hearsay" as the defendant attempts to suggest, but on Thrower's personal knowledge, and would not have been the proper basis for an objection. Defendant's claim that counsel "failed to prepare" is conclusory and unsupported. See *Wilson; Tejada, Stano* and *Ross, supra.*

Defendant states that at sentencing when the court asked whether he had gone over the PSR with counsel, he stated that he had carefully read the PSR and found quite a few errors but he had not gone over it with counsel. (Doc. 243 at 2-3). The court went over the discrepancies that defendant identified with respect to his prior convictions, and then proceeded to objections raised by counsel. (*Id.* at 3-7). Although defendant now asserts that "counsel could not have prepared a productive Objections brief and could not have rectified any incorrect or disputed issues," he does not identify any of the issues counsel should have raised that would have made a difference in the outcome of the proceedings.

Defendant's next contention is that he had to correct an erroneous representation to the court made by the government. He states that at sentencing the government stated it filed an enhancement information based on the conviction reflected in paragraph 63 of the PSR and that there was no indication of any

objection.  (Doc. 243 at 6).  Defendant stated that he "informed the court that the PSR was in error because counsel failed to do so."  Actually, the record reflects that defendant initially admitted it was a conviction he received, but stated that he thought it could not be used because the charge was over ten years old.  (Doc. 243 at 29).  After the court explained that the conviction could be used because the ten year period extended to within the time frame of the indictment, defendant stated that he was "going to have to deny [the conviction]."   There was no error or omission of counsel during this exchange.

At the end of the portion of defendant's memorandum regarding ineffective assistance of counsel, he asserts that his suspicions regarding counsel's apparent drug use and mental instability were confirmed when, just four months after trial counsel took his own life.  (Doc. 268, exh. G).  Defendant asserts that counsel's suicide, coupled with the statements of counsel's wife, that "she had expected something of this nature to happen because of the severe depression the victim has been in for some time" are conclusive evidence that counsel had been impaired for quite some time and at the time of defendant's trial was incapable of performing the duties required of a defense attorney.  Absent additional record support for this assertion, the court finds defendant's claim that counsel was constitutionally ineffective to be totally unfounded.

### 3.  AUSA's drug quantity determination

The defendant contends that the AUSA's drug quantity determination led to an erroneous determination of the forfeiture amount.[7]  At trial the AUSA informed the court that he wanted to proceed with the forfeiture count and ask the jury to return a monetary judgment against the defendant if there was a guilty verdict so that it could be collected if and when he was able to locate assets.  (Doc. 239 at 110-111).

---

[7]In his reply brief he asserts that the government's failure to address this issue means that it has conceded.  Although perhaps the issue should have been addressed by the government, its omission is not tantamount to a concession, particularly where, as discussed herein, the issue does not have merit.

The AUSA posited that although no specific assets had been identified, he could argue for the forfeiture of any proceeds or property used in furtherance of the unlawful activity. The court concurred that the government was entitled to proceeds or property, but noted that it had not previously presided in a case in which there was not some way to quantify or identify the property.  (*Id.* at 111).  The AUSA indicated his intent to argue that the forfeiture amount could be derived from the price of the cocaine and the quantity of kilograms distributed, as shown by the evidence, under the "proceeds" theory.  Counsel for the defense, when asked for his response, indicated "We have no response to that, your Honor." (Doc. 239 at 112). Defendant now contends that had counsel been "coherent," he should have objected.  Defendant maintains that the proper amount of forfeiture would have been the difference between the selling price and the purchase price, times the quantity of kilograms involved in the conspiracy, and that this amount should not have been his sole responsibility, but divided among the co-conspirators.  (Doc. 268 at 19).

The court's instructions to the jury on the issue of forfeiture included the following:

> Proceeds which are subject to forfeiture constitute any property that the defendant obtained directly or indirectly as a result of illegal drug activity.

> Money obtained in exchange for controlled substance is proceeds.

> The total amount of gross proceeds obtained by the defendant as a result of his drug trafficking is forfeitable.  The defendant (sic) is not required to prove that the property obtained by the defendant or any part of it still exists or is still in the defendant's possession at the time of trial.  Rather the government is only required to prove that the defendant obtained proceeds, and that those proceeds are connected to his dug (sic) conspiracy violations.

> Thus, the government is entitled to a forfeiture judgment against the defendant for an amount of money equal to the value of the property constituting or derived from any gross proceeds the defendant

> obtained directly or indirectly as a result of his participation in the drug offense of which he has been convicted.
>
> The government is seeking forfeiture of an amount of money. It is your duty to determine what property, if any, should be forfeited. You must decide whether the government proved by a preponderance of the evidence that this property constituted or derived from proceeds the defendant obtained directly or indirectly as a result of his illegal drug trafficking.

(Doc. 239 at 167-168). In his argument, the AUSA told the jury that the government was seeking the proceeds of the defendant's drug activity, that is, money obtained as a result of the drug trafficking offense. (*Id.* at 170). The government argued that at least 30 kilograms were distributed during the course of the conspiracy, and that the government was looking to recover that amount in dollars. The government then suggested that basing the forfeiture amount on the price paid times 30 kilograms, the government would be entitled to a verdict of over $500,000, while using the selling price times 30 kilograms would yield a forfeiture verdict of over $700,000. (*Id.* at 171-172). Defense counsel argued that there was no evidence that the co-conspirators generated anywhere near the amount sought by the government in forfeiture, that even the most wildly optimistic estimate for the assets acquired by the defendant were three or four vehicles, none of which was very new, and some furniture. (Doc. 173). In rebuttal the AUSA noted that the proceeds were how much was paid for the drugs.

> Title 21 U.S.C.A. § 881(6) provides for the forfeiture of
>
> All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter.

"Proceeds" are not limited to property found in the hands of a drug dealer. *United States v. Four Million, Two Hundred Fifty-five Thousand*, 762 F.2d 895, 905 (11th Cir. 1985). And proceeds are not the same as profits. See e.g., 21 U.S.C. § 853(a).

The jury entered a forfeiture verdict of $340,000. Defense counsel's argument focused on asking the jurors to only award an amount of forfeiture that corresponded to the assets and proceeds actually proven by the government in its case. Although the court obviously is not privy to the manner in which the jury reached that figure, it is clear that the jurors did not totally accept the government's argument regarding quantity.[8] The instructions and argument presented to the jury were legally correct, and defendant's dissatisfaction with the forfeiture verdict is not alone sufficient to assail counsel's performance.

4. <u>Sentencing Court found drug type and quantity greater than that found by jury</u>

Defendant contends that because the jury found only that the offense conduct involved 5 kilograms or more of cocaine, the sentencing court was bound by that, that its finding of quantity and type greater than that was in error. He also claims that at sentencing the court erroneously adopted the AUSA's total quantity of cocaine, 30 kilograms. He noted that the court stated that the jury's quantity determination was strictly for the purpose of determining the statutory maximum punishment "which is the same regardless of whether it's 50 grams or more of crack of 5 grams (sic) or more of cocaine powder." The defendant is correct in noting that this statement is inaccurate. A correct statement of the law would be that the statutory maximum would be the same regardless of whether its 50 grams or more of crack or 5 <u>kilog</u>rams or more of cocaine powder. 21 U.S.C. § 841(b)(1)(A) (ii)(II) and (iii). It is not unreasonable to assume that the court correctly stated the law and

---

[8]One possible explanation for that amount was that the jury found the defendant to be responsible for 20 kilograms of cocaine at $17,000 per kilogram.

it was transcribed inaccurately, or that it was a mere misstatement, not based on an actual belief.

Essentially, defendant's argument is that the district court erred in holding him accountable for any amount of cocaine base as relevant conduct after the jury declined to hold him accountable for any cocaine base.  This issue was raised on appeal.  The law is well established that a district court need not reconsider issues raised in a section 2255 motion which have been resolved on direct appeal, and therefore defendant is not entitled to relitigate this issue here.  *United States v. Nyhuis,* 211 F.3d 1340, 1343 (11th Cir. 2000); *Mills v. United States*, 36 F.3d 1052, 1056 (11th Cir. 1994).  The Eleventh Circuit found  that just because the jury did not find that the government had proven the conversion of powder to cocaine base beyond a reasonable doubt did not mean that the fact of the conversion was not proven by a preponderance of the evidence, which is the standard applied to relevant conduct at sentencing.  400 F.3d at 1304.  The U.S.Code authorizes a sentence of up to life imprisonment based on the jury's finding that he possessed at least 5 kilograms of cocaine powder. See 21 U.S.C. § 841(b)(1)(A)(ii)(I). Duncan's life sentence obviously fell within this maximum. And, Duncan's sentence did not run afoul of the holdings in *Booker* which were to be retroactively applied to the defendant's case, including the holding that"[a]ny fact ... which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." 400 F.3d at 1304-1305 (citing *Booker*, 125 S.Ct. at 756).   The Eleventh Circuit concluded that it was not error for the sentencing judge to find a fact that had been acquitted by the jury when determining Duncan's sentence.  400 F.3d at 1305. It also rejected defendant's arguments based on *ex post facto* and due process.  400 F.3d at 1306-1307.

Defendant attempts to circumvent the procedural bar by making allegations of ineffective assistance of counsel so that he might re-litigate his claim.   His attempts to do so are unavailing and he is not entitled to relief.

5.  Violation of Rule 23

Defendant maintains that the district court violated Federal Rule of Criminal Procedure 23 when it, and not the jury, decided relevant facts.  Rule 23 sets forth certain parameters for jury or nonjury trials, including the criteria for not holding a jury trial to which the defendant is entitled, the size of the jury, and certain requirements of a nonjury trial.  how a jury trial may be waived, the entitlement to a jury trial.

Defendant argues that because he did not waive his right to a jury trial as set forth in the rule, the district court did not have authority to make determinations regarding drug type and drug quantity.  As noted above, on appeal, the Eleventh Circuit found that the trial court's consideration of acquitted conduct at sentencing did not violate the defendant's Sixth Amendment jury trial rights, as the court did not impose a sentence in excess of the one  authorized by jury verdict.  Defendant may not relitigate this issue via a § 2255 motion.  See *Nyhuis, Mills, supra*.  To the extent he might argue that this is a different ground than that raised on appeal, because the Rule 23 argument *could* have been made on appeal, and he has not shown cause for his failure to do so, he may not raise it now.  *Lynn v. United States,* 365 F.3d 1225, 1234-35 (11th Cir. 2004); *Bousley v. United States,* 523 U.S. 614, 118 S.Ct. 1604, 1610, 140 L.Ed.2d 828 (1998).

6.  Firearm Enhancement

Defendant next contends that counsel was constitutionally ineffective for his failure to successfully challenge the guidelines adjustment for possession of a firearm.  § 2D1.1(b)(1).   He claims that Special Agent Dillard's testimony was

fabricated, and therefore that any testimony about defendant's arrest on the night of April 21, 2003 and items seized from his vehicle should not have been considered. He also claims that there was no reliable evidence showing that any other firearms were actually possessed in furtherance of the conspiracy or reasonably foreseeable to him during the course of the conspiracy. Defendant argues that when the sentencing court stated that the enhancement would be applied unless the defendant establishes the fact that it's clearly improbably that that firearm [the one found in the vehicle on the date of defendant's arrest] was connected to the drug trafficking activity." (Doc. 243 at 27). He now asserts that counsel should not have stood mute but should have argued his client's position to success.

Section 2D1.1(b)(1) of the Sentencing Guidelines provides that the firearm adjustment "should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1, n.3; *United States v. Sanchez*, 269 F.3d 1250, 1262 n. 18 (11th Cir. 2001); *United States v. Hall*, 46 F.3d 62, 63 (11th Cir. 1995). The burden is on the defendant to show that a connection between the firearm and the offense is clearly improbable. *Sanchez*, 269 F.3d at 1262 n. 18; *Hall*, 46 F.3d at 63. Additionally, the adjustment is properly applied when a co-conspirator possesses a weapon, even without the defendant's knowledge, so long as "(1) the possessor of the firearm was a co-conspirator, (2) the possession was in furtherance of the conspiracy, (3) the defendant was a member of the conspiracy at the time of possession, and (4) the co-conspirator possession was reasonably foreseeable by the defendant." *United States v. Suarez*, 313 F.3d 1287, 1294 (11th Cir. 2002) (citing *United States v. Gallo*, 195 F.3d 1278, 1284 (11th Cir. 1999)).

The district court's application of the firearm adjustment was challenged on appeal, and rejected without the need for discussion by the Eleventh Circuit. 400 F.3d at 1300-1301. To the extent the defendant seeks to relitigate this issue under the guise of an ineffective assistance of counsel claim, his claim fails as it is without

merit.  Counsel objected to the firearm adjustment at sentencing, arguing that the seizure of the firearm from the vehicle was after the date of the offense conduct and was no proof of his possession of a firearm during the course of the conspiracy. (Doc. 243 at 24).   Counsel maintained that there was no proof that he knew the weapon allegedly possessed by co-defendant Roberts was present.  In applying the firearm adjustment, the sentencing court noted first that a .25 caliber handgun was found at Roberts' residence, inside a drawer along with drugs and money, and that as a co-conspirator, defendant could be held responsible for the firearm since he was a member of the conspiracy and it was reasonably foreseeable that a firearm would be involved.  (Doc. 243 at 26).  Additionally, a number of witnesses testified that defendant personally was known to possess a firearm and that he had transported one to Pensacola.  (Doc. 243 at 27).  Finally, the court found that the weapon recovered from the vehicle at the time of his arrest supported the application of the enhancement. (Doc. 243 at 27).  Because the two level adjustment was proper for any of the three reasons stated by the district court, and defendant has not suggested a successful argument counsel could have made to defeat the application of the adjustment, he has not shown that counsel was constitutionally ineffective.

### 7. Role enhancement

The defendant argues that the sentencing court erred in applying a four point enhancement for his role in the offense and that counsel was ineffective for not arguing this issue to success.  The district court's application of the role adjustment was challenged on appeal, and rejected without the need for discussion by the Eleventh Circuit.  400 F.3d at 1300-1301.  Again, to the extent the defendant seeks to relitigate this issue under the guise of an ineffective assistance of counsel claim, his claim is without merit and must fail.

Where a defendant is an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive he is to receive a four-level sentencing enhancement. U.S.S.G. § 3B1.1; *United States v. Rendon*, 354 F.3d 1320, 1332 (11th Cir. 2003). The factors that a sentencing court considers in determining if this enhancement applies are: "(1) exercise of decision-making authority, (2) nature of participation in the commission of the offense, (3) recruitment of accomplices, (4) claimed right to a larger share of the fruits of the crime, (5) degree of participation in planning or organizing the offense, (6) nature and scope of the illegal activity, and (7) degree of control and authority exercised over others." *United States v. Ramirez,* 426 F.3d 1344 (11th Cir. 2005) (citing *Rendon*, 354 F.3d at 1331-1332); *United States v. Vallejo*, 297 F.3d 1154, 1169 (11th Cir. 2002) (citing U.S.S.G. § 3B1.1, cmt. n.4. Where a member of a drug conspiracy arranges drug transactions, recruits others to work for the conspiracy, or had decision-making authority and exercised control, it is appropriate for the sentencing court to impose an enhancement for aggravating role pursuant to U.S.S.G. § 3B1.1. *Ramirez,* 426 U.S. at 1355; *United States v. Shazier*, 179 F.3d 1317, 1320 (11th Cir. 1999); *United States v. Matthews*, 168 F.3d 1234, 1249-50 (11th Cir. 1999). Moreover, where a defendant "fronts" drugs to a co-conspirator who sells the drugs and then pays the defendant for the drugs it is appropriate for the sentencing court to impose a U.S.S.G. § 3B1.1 enhancement. *Matthews*, 168 F.3d at 1250. As noted by the government, the defendant in this case arranged drug shipments, recruited persons into the conspiracy, directed co-conspirators' activities, and fronted drugs to numerous coconspirators. (Doc. 237 at 67-75, 79-82, 97-99, 104-110, 114-123, 135-40, 153-54, 180-191; doc. 238 at 10-21, 26, 95-98, 102-114, 117-18, 127-132, 147-48, 157-161, 178-195). The conspiracy involved well over the threshold number of four people, and the adjustment was properly applied. (*Id.*)

**Accordingly, it is respectfully RECOMMENDED:**

**The defendant's motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 (doc. 268) be DENIED.**

**At Pensacola, Florida, this 17th day of September, 2007.**

/s/ *Miles Davis*

**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts,* 858 F.2d 698, 701 (11th Cir. 1988).**